THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY DALE BRADFORD, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DWIGHT JAMES VIOLETTE, Defendant-Appellant.

Second District   Nos. 77-603, 77-604 cons.

Opinion filed May 8, 1979.—Rehearing denied June 6, 1979.

Mary Robinson, Michael Mulder, and Paul Glaser, all of State Appellate Defender's Office, of Elgin, and Michael J. Boyd, of Libertyville, for appellants.

Dennis Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Gary Bradford, Dwight Violette and Larry Bradford were jointly charged, by information, with armed robbery and attempt murder. Amended individual informations were subsequently filed against Gary Bradford and Violette and they were each tried separately. Gary Bradford was charged with three counts of attempt murder and two counts of armed robbery. He was tried by a jury, found guilty of both counts of armed robbery and one count of attempt murder. Violette was also charged with three counts of armed robbery and two counts of attempt murder. Violette was also tried by a jury, found guilty of three counts of armed robbery and one count of attempt murder. In their respective trials both men were sentenced to concurrent terms of 60-100 years for attempt murder and 30-50 years for armed robbery. Both have appealed to this court.

Since the charges against these two defendants arose out of the same offenses, we have consolidated these cases for decision.

In the evening of March 27, 1977, the owner of Leno's Submarine Shop went to the shop about 9:30 p.m. to collect the proceeds of the day. He left about $90 in the cash register for change the next day. The shop closed at nine and the maintenance man, Paul Wallin, and his son, Michael, were in the shop. About 10:50 p.m. a man came to the front door saying that he had ordered a pizza. Wallin advised him that the shop was closed, the man then asked for a sandwich and Wallin again advised him that he was not able to prepare the same. Shortly thereafter the same man came to the back door, repeated his request and, after being refused again, forced Wallin to open the door at gun point and entered the store with a companion. Wallin and his son were forced to lie on the floor and were then kicked repeatedly, both suffering rather substantial injuries. One of the armed robbers took $15 and a wrist watch from Wallin. They also took $90 which had been left in the register by the owner.

Waukegan police officers Bridges and Sturgeon responded to a call reporting a possible robbery at the shop. Bridges stayed in front of the shop and Sturgeon went to the rear. Shortly thereafter the defendants Violette and Gary Bradford exited the front door. A gun battle then ensued during which Officer Bridges was shot in the chin and hand by Violette. Bradford also attempted to shoot at the officers several times but his gun jammed. He then threw his gun at Officer Bridges who was lying on the ground. Gary Bradford was shot in the chest and lower back. Violette was shot in the arm.

A short time later a car drove up in front of the Victory Memorial Hospital and defendant, Gary Bradford, was dumped in the gutter in

front of the hospital, as testified to by the security guard who observed the incident. Bradford was taken into the hospital and in his pocket the name and address of defendant Violette was found. The police officers went to that address and found Violette lying unconscious on the floor of the living room with a gunshot wound in his left arm. At that time the officers recovered the money and watch belonging to the victim Wallin.

Three issues raised by the two defendants in their appeals are the same, namely (1) whether the jury instructions allowed the jury to convict the defendants of attempt murder without finding that defendants had the specific intent to kill, (2) whether the sentences for armed robbery should be vacated and defendants remanded for resentencing in the event that this court vacates the conviction for attempted murder, and (3) whether the sentences imposed are excessive.

Based upon *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, the State in the first instance conceded that the convictions for attempt murder were improper. However, the State subsequently moved to withdraw its concession of error based on our supreme court's opinion in *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331. We granted that motion and will now consider the issue involved. In *Roberts* the court considered the very same issue as presented here as to the two instructions, *viz.*, attempt (IPI Criminal No. 6.05) and murder (IPI Criminal No. 7.01). It also interpreted the *Harris* case as well as *People v. Muir* (1977), 67 Ill. 2d 86, 365 N.E.2d 332, and *People v. Trinkle* (1977), 68 Ill. 2d 198, 369 N.E.2d 888. As in the case before us, neither Roberts or Grizzle objected to these instructions at the trial and did not preserve them by a post-trial motion. In *Roberts* the court recognized that defense counsel may "waive" the right to raise errors in later proceedings by failure to object to those errors at trial. In doing so it observed that the reason for this waiver rule is that:

> "* * * timely objections to defective instructions permit the court to correct the defects before the instructions are given, and do not therefore permit a party failing to object to gain the advantage of obtaining a reversal based upon his own failure to act." (75 Ill. 2d 1, 11.)

However, the court cautioned, in substance, that the waiver rule was to be applied sparingly and noted the comment in *Henderson v. Kibbe* (1977), 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212, 97 S. Ct. 1730, 1736, where Justice Stevens stated:

> "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court."

The court held that where there is a failure to object to an instruction, waiver is the rule and that Rule 451(c) (Ill. Rev. Stat. 1977, ch. 110A, par.

451(c)) constitutes only a limited exception. As the court stated in *Roberts*:

"* * * in the absence of such an objection the defects are waived unless they are 'substantial' and the 'interests of justice require' the court to consider them." (75 Ill. 2d 1, 15.)

The court further concluded in *Roberts* that neither defendant could meet the requirements of the Rule 451(c) exception and that Supreme Court Rule 615 (Ill. Rev. Stat. 1977, ch. 110A, par. 615), dealing with plain error, did not preserve for review all errors affecting substantial rights where they have not been brought to the attention of the trial court.

■■ We therefore find that *Roberts* controls here and that defendants' contention attacking the jury instructions is not substantial and has been waived.

In view of our holding as to this issue, the second contention of the defendants falls by the wayside as we do not vacate the convictions for attempted murder.

■■ We turn now to the two additional and separate contentions of defendant Violette. The first is that the trial court erred in allowing evidence of his prior misdemeanor convictions to be admitted for the purpose of impeachment. Violette testified to, and the State's Attorney introduced evidence of, two felony convictions and two misdemeanor convictions. One of the misdemeanor convictions was for theft under $200, and the second was a conviction for the receiving of stolen property. In support of his contention that this is error, Violette has cited *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695. However, this issue was passed on by this court in *People v. Clay* (1977), 45 Ill. App. 3d 145, 359 N.E.2d 482, which was followed by our opinion in *People v. Spates* (1978), 62 Ill. App. 3d 890, 379 N.E.2d 869, reaffirming our decision in *Clay*. In those cases we expressly held that the court's discretion to admit evidence of crimes involving dishonesty could include misdemeanors, or crimes punishable by imprisonment for less than one year, if the other requirements of Rule 609 of the Committee of Rules of Practice and Procedures of the Judicial Conference of the United States were met as adopted in *Montgomery*. We therefore find that the trial court did not abuse its discretion in the admission of the offenses of theft and receiving stolen property, both being convictions involving dishonesty.

■■ The next contention of defendant Violette is that the trial court erred in refusing to instruct the jury on instructions tendered by him as to the crime of concealing or aiding a fugitive. While it is true the defendant is entitled to have the jury instructed as to his theory of the case, under the facts present here, the theory of the defendant was so incredible that the court's refusal to give such instructions cannot be error. Defendant testified that he just happened to be in the alley relieving himself when the

gunfight occurred and that he was shot in the shoulder. His explanation for fleeing the police and taking the defendant Bradford to the Victory Memorial Hospital and depositing him in the gutter there was that Bradford was a friend of his. To the contrary, the evidence shows that Violette was identified by Wallin as one of the two armed robbers, and when the police found Violette in his apartment they also recovered Wallin's watch. We therefore find this argument to be without merit and hold that the court properly refused to give the instructions tendered by the defendant. Additionally, flight of Violette with defendant Bradford would be part of the *res gestae* of the crime even if he had not been positively identified by the victim. See *People v. Hickman* (1974), 59 Ill. 2d 89, 319 N.E.2d 511, and *People v. Trammell* (1979), 71 Ill. App. 3d 60, 389 N.E.2d 1.

Turning now to defendant Bradford, we note that he contends that during the course of his trial the court should have adjourned to determine his competency to stand trial before proceeding. An examination of the record discloses that prior to his trial Bradford contended that he had no recollection whatsoever of his participation in the armed robbery and attempted murder. Accordingly he was examined by two psychiatrists appointed by the court. The first psychiatrist stated in his report to the public defender that the defendant Bradford was "culpable in terms of law inasmuch as he was not acting under a delusion or uncontrollable impulse." The second psychiatrist stated in his opinion that Bradford was "doing his best to manufacture a defense for his lawyer." He observed that the issue of Bradford's amnesia was quite suspect. In addition, he observed that the defendant could recall favorable but not incriminating material which was a medical impossibility. He concluded that Bradford was not psychotic and was fit to stand trial. Interestingly enough, the issue of Bradford's alleged unfitness to stand trial was dropped by the defendant's attorney subsequent to these examinations. Only on the second day of the trial did defendant raise this issue again by advising the court, in chambers, that he felt that he was not competent to stand trial because he didn't remember anything about the alleged crimes. The trial court observed, for the record, that approximately 75% of the State's case had been presented prior to the defendant's assertion and refused to adjourn the trial for additional competency examinations. As the trial proceeded the defendant sat down on the floor and asserted that he was "dizzy."

■■ ■ In support of his contentions on competence the defendant has cited an opinion of this court, *People v. Burnside* (1977), 52 Ill. App. 3d 524, 367 N.E.2d 733. We find *Burnside* to be distinguishable on its facts. We are confronted herein by defendant's mere allegation of amnesia. The same judge who presided at the trial of Bradford had appointed the

psychiatrists who examined him prior to trial. He was, therefore, familiar with the defendant's contention. The mere reassertion of the amnesia claim by the defendant during the second day of the trial, in our opinion, created no new issue of unfitness or incompetence. It is of further interest to note that the defense counsel did not present this issue himself and did not pursue the issue of the defendant's alleged incompetence prior to the time of trial. The bare assertion by a defendant that he does not remember the details of a crime of which he is accused does not, of itself, constitute incompetence to stand trial. We further note that Bradford's "bizzare conduct" after the court refused to have him re-examined was so clearly self-serving and calculated as to be unworthy of further comment. The trial judge clearly did not abuse his discretion in refusing to adjourn the trial for the further examination of Bradford's mental capacity.

■■ The next contention of defendant Bradford is that the admission of two color photographs showing the injuries to Officer Bridges' chin and hand resulting from the gunfire was error. Defendant contends that in view of the clear and adequate testimony by the prosecution witnesses as to the nature and extent of Bridges' wounds, such pictures were unnecessary and were introduced only for the purpose of arousing prejudicial emotion. However, at trial, while defense counsel objected to the photographs, he conceded that the supreme court would not reverse because of their admission. The defendant has cited *People v. Nickolopoulos* (1962), 25 Ill. 2d 451, 185 N.E.2d 209, to support his position. *Nickolopoulos* did not deal with the introduction of photographs showing the injuries to the person assaulted, and we do not find it applicable here. However, in *People v. Seaberry* (1978), 63 Ill. App. 3d 718, 722-23, 380 N.E.2d 511, 515, this court did consider the admission of gruesome pictures of the victim, and we stated that:

> "While several of the photographs are of a gruesome nature the trial court was not required to reject them if they were relevant to establish any fact in issue. [Citations.] Here, the photographs highlighted the viciousness of the attack and were probative of the fact that defendant must, at the very least, have known that his actions created a 'strong probability' of 'death or great bodily harm' to the victim. (Ill. Rev. Stat. 1977, ch. 38, par. 9—1.) It was necessary for the State to show this mental state beyond a reasonable doubt in order to obtain a conviction of murder; and this was particularly true because the defendant presented the defense that he lacked the necessary mental state to constitute murder."

In the case before us the defendant was charged with attempt murder and we find that our statement in *Seaberry* is equally applicable to the facts here. The reader is also directed to *People v. Henenberg* (1973), 55 Ill. 2d

5, 14, 302 N.E.2d 27, 31, where the supreme court, in considering the admissibility of gruesome photographs, stated, "They did not become unnecessarily cumulative because there was oral testimony concerning the same issues." We therefore reject this contention of the defendant.

■ We now turn to the third contention raised by both defendants namely that their respective sentences are excessive. The two men each received the same sentence. Defendant Bradford contends that:

> "In a little over nine years, Violette has been found guilty of some twelve offenses, including a conviction for carrying a concealed weapon, several drug charges, two theft convictions, and three convictions for burglary * * *. In comparison, Mr. Bradford has had only half as many convictions."

On the other hand, defendant Violette, admitting that he had had a number of convictions, argues that none involved the use of violence. We are not persuaded by either argument. Both defendants have a long record of both felonies and misdemeanors, and we observe that the instant offenses are the epitome of violent conduct. The Supreme Court of Illinois has frequently stated that it would not substitute its judgment for that of the trial court in the imposition of the length of sentences. Many sentences have been imposed of comparable length for offenses similar to those committed herein. The most recent pronouncement of the supreme court on this issue is found in *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882. In view of the vicious attack on the police officers committed herein, and the equally vicious attack on the two victims of the armed robbery, as well as the lengthy records of both defendants, we will not disturb the sentences imposed by the court. We therefore affirm the trial court.

Affirmed.

NASH and SEIDENFELD, JJ., concur.