THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DUNCAN STACKER, Defendant-Appellant.

First District (2nd Division)    No. 78-1073

Opinion filed September 25, 1979.

Ralph Ruebner and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Christopher Cronson, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Defendant Duncan Stacker was charged by information on May 17, 1979, with one count of rape and two counts of deviate sexual assault. The case was tried to a jury which found him guilty of those charges. Stacker's motion for a new trial was denied, judgment was entered on the verdict and he was sentenced to from 8 to 12 years in the penitentiary, from which judgment and sentence he appeals.

Three issues are raised on appeal: (a) whether there was error in giving the jury an instruction that could have suggested defendant had confessed to more than one crime; (b) whether defendant was denied a fair trial because two witnesses made statements suggesting that there existed other "victims" of defendant's activities; and (c) whether the mittimus issued is in conformity with the verdicts.

The victim, age 18 at the time of trial, testified that at about 2 p.m. on March 30, 1976, upon returning home from school, she was approached by a man in front of her house. The man, who the victim later identified as Stacker, asked her, "what's happening," to which she replied, "nothing." Thereupon defendant seized her, forced her into her backyard at knife point, directed her to a concrete space under the back porch, and forced

her to remove her clothing, some of which he removed himself. Then, while still holding the knife in his hand, he had anal intercourse with her then forced her to take his penis in her mouth and thereafter rub his penis with her hands. At this point, she attempted to escape but he again seized her and threatened to kill her if she tried to escape, and thereafter had genital intercourse with the victim. After replacing his own clothes and warning her not to tell her mother or police what had happened, he left the area. During the time of confrontation she was able to see his face and clothing, which she described as a brown knit cap, brown pants and a brown jacket.

The victim put on her coat and ran toward the street where she saw a woman whom she told she had been raped. The woman escorted her back to her home, a neighbor arrived, the police were called and upon their arrival they were told by the victim of the attack. She was taken by the police to the Jackson Park Hospital where she was examined and treated. On the following April 6, the victim viewed a police lineup. Although she was reluctant to tell police that she recognized him because she feared whatever consequences might ensue from that identification, she positively identified defendant standing in the lineup as her assailant. She later went to the doorway of a separate room in which defendant was standing and again identified him.

Investigator Maurice Sykes, a police officer, testified that he was assigned to the Area 1 Homicide Unit of the Chicago Police Department on April 6, 1976. On that day he and his partner, John Merriwether, drove the victim and her mother from their home to Area 1 Homicide headquarters where she was secluded in a room while Sykes gathered together a lineup of five men, including defendant. Stacker elected to stand in the center of the lineup, at position number 3. The victim thereafter viewed the lineup through a two-way mirror and having first ruled out those men occupying positions numbered 1, 2, 4 and 5, she positively identified defendant, occupying position number 3, as the man who had assaulted her.

Sykes thereafter interviewed Stacker in an interrogation room alone, read him "Miranda warnings" relative to his constitutional rights, which defendant told him he understood, and advised Stacker that he had been identified as the offender by the victim in this case. Sykes testified that he then asked Stacker "* * * if he wished to identify any victims of his." An objection to this testimony was sustained, the answer was stricken, and the jury directed to disregard the answer. Sykes then asked Stacker if he could identify the specific victim and Stacker viewed her through a two-way mirror as she sat in an adjoining room with her mother and another woman. Stacker identified her as the girl he had raped near 73rd Street and Oglesby Avenue after having forced her under a porch, caused her to

disrobe, and to lie down upon her coat. Sykes asked Stacker "* * * if anything else was done and he nodded in the affirmative. I asked him what and he would not reply." Later, when the victim was brought to the doorway of the interrogation room Stacker again identified her as the person he had raped.

On cross-examination, Sykes testified that none of the conversations which he had described on direct examination were included in the police report prepared by him and his partner and that no question and answer form of statement was taken from defendant. When asked by defense counsel, whether any civilians aside from law enforcement personnel were permitted to talk to Stacker while in custody, Sykes replied "one of the other victims" had talked to defendant at the police station on the day of the lineup. The defense moved for a mistrial on the ground that the witness, contrary to previous defense motion *in limine*, had mentioned other victims during the course of his testimony. The motion was denied by the court on the ground that the response of the witness was invited by defense counsel.

Officer Guy Holec, a Chicago police officer, testified that upon hearing a radio call, he and his two partners drove to the vicinity of the 2300 block of east 72nd Street where he had a conversation with a police officer and a woman, whom he named. Although this woman had been allegedly assaulted by defendant in an earlier incident, no mention of this fact was made by the witness. The defense objected to the mere mention of this woman's name as being contrary to a ruling on a defense motion *in limine* to prevent testimony concerning her from being elicited during the course of the instant trial. The objection was overruled on the ground that no testimony regarding the commission of any crime involving the woman was elicited and that her name was mentioned only with regard to what the officer did upon receiving the call. A defense motion for mistrial for the same reason was also denied. Holec testified that after the conversation, he and his partners began to tour the neighborhood and within five minutes saw defendant walking down the sidewalk at about 7235 S. Oglesby and placed him under arrest.

Dr. Betty Chua testified for the State that she had examined the victim at the Jackson Park Hospital on March 30, 1976. She found that the victim's hymen was recently ruptured and that she sustained a superficial laceration of the anus. She took anal, oral, cervical and vaginal swabs during the examination, from which slides were prepared consisting of smears from those areas.

Rodney Blach, employed as a micronanalyst at the Chicago Police Department Crime Laboratory testified that he received a sealed white envelope from Jackson Park Hospital bearing the name of the victim and an evidence inventory number. He removed a number of slides each

marked with a word, cervix, oral, vaginal and rectal. After following certain laboratory procedures, he found evidence of spermatozoa on each of the slides,[1] indicative of the presence of human semen.

Assistant State's Attorney Sander Klapman testified that on April 6, 1976, he was assigned to the felony review unit of the State's Attorney's office. At about 11 p.m. on that date, he spoke to Investigator Sykes and the victim, and then to defendant alone. After advising him of his constitutional rights, he interrogated Stacker who admitted to him that he had had intercourse with the victim but would not say what other acts had been performed. Klapman then brought the victim into the room and Stacker stated that she was the girl he had spoken about. He also asked the victim if Stacker was the man who had raped her and she answered in the affirmative.

Leone Becker, a police woman, who since that time had retired, testified that while on duty on March 30, 1976, at about 2:30 p.m. she spoke to the victim who told her that she had been raped, gave her the details of the occurrence and a description of her assailant as 5'10" tall weighing 140 pounds, age 19 or 20 and wearing a brown jacket and pants and a knit hat with a white band.

The parties stipulated that at the time of trial, defendant was 19 years of age. The defense moved for a directed verdict, which was denied.

Defendant testified on his own behalf. He was born February 18, 1958, served in the Marine Corps in March 1976 and left camp in San Diego on leave, preparing to go to Hawaii, where he was to be stationed. He testified that in March of 1976 he was 5'2" tall and weighed less than 135 pounds. He denied raping or otherwise assaulting the victim. On cross-examination he did not recall having had conversations with Investigator Sykes or Assistant State's Attorney Klapman on April 6, 1976, and denied telling either that he had raped the victim. He denied having seen her at Area 1 Homicide headquarters on the date in question.

Following closing argument, instructions were read to the jury. Among these was People's Instruction No. 8, taken from Illinois Pattern Jury Instructions, Criminal No. 3.07 (1968) (hereinafter cited as IPI Criminal) given without objection by defendant:

> "You have before you evidence that the defendant confessed that he committed the crime charged in the information. It is for you to determine whether the defendant confessed, and, if so, what weight should be given to the confession. In determining the weight to be given to a confession, you should consider all of the circumstances under which it was made."

---

[1] In closing argument, the State argued to the jury that no semen was found in the slides taken from the oral and anal swabs; in having done so, it appears that the evidence was misstated.

The jury was given two pairs of verdict forms, one pair each for "not guilty" and for "guilty" verdicts on the charges of rape and deviate sexual assault. The verdict forms concerning deviate sexual assault did not separate or mention the two different acts charged by the two counts in the information. The jury found defendant guilty and the two "guilty" forms were signed by them.

Defendant first contends that the instruction given to the jury regarding the weight to be given to a confession constitutes error because the instruction made no distinction between the two crimes charged and, therefore, left the implication that defendant's confession went to the entire information, rather than just the rape count. He argues that the giving of an instruction on confessions where no confession was made has been repeatedly held error. Defendant points to the testimony of Investigator Sykes and Assistant State's Attorney Klapman, both of whom stated that Stacker told them he had intercourse with the victim and "other acts," but did not say what they were. Therefore, he argues, there was no confession to deviate sexual assault, yet the instruction indicated that Stacker had confessed to the information *in toto*. Finally, defendant argues that although no objection to the instruction was made, the court can consider the issue as plain error under Supreme Court Rule 451(c). (Ill. Rev. Stat. 1977, ch. 110A, par. 451(c); *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532.) We note that the defense did not raise the allegedly erroneous instruction as a point of error in its post-trial motion.[2] The State contraposits waiver and harmless error to defendant's theory.

Our supreme court has recently re-examined the question of whether failure to object to an instruction at trial will be deemed waiver of a defendant's right to raise as error on review its having been given. In *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, erroneous instructions defining attempt murder were given in the trial court without objection and the issue was not raised until appeal from the denial of a post-conviction petition. The supreme court observed that the reason for the waiver rule, as stated in the many cases considering the issue, is that timely objections to defective instructions permit the court to correct the defects before the instructions are given and do not, therefore, permit a party failing to object to gain the advantage of obtaining a reversal based upon his own failure to act. Recognizing that the waiver rule is not absolute, as indicated in Supreme Court Rule 451(c) (58 Ill. 2d R. 451(c)), which provides that *substantial* defects are not waived by failure to make timely objections thereto if the interests of justice require, the court further observed that such an exception has not been broadly applied.

---

[2] We also note that the notice of appeal designates only the judgment "guilty of rape" as the subject matter of the appeal. Since the State makes no point of this aspect of the appeal, we will treat the notice of appeal as encompassing the judgment of guilt as to deviate sexual assault as well as rape.

The court cited *Henderson v. Kibbe* (1977), 431 U.S. 145, 52 L. Ed. 2d 203, 97 S. Ct. 1730, which held that it was not reversible error to omit the element of causation from jury instructions in a trial for second degree murder. The court quoted from the opinion of Mr. Justice Stevens in *Henderson,* who said: "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." (431 U.S. 145, 154, 52 L. Ed. 2d 203, 212, 97 S. Ct. 1730, 1736.) The court in *Roberts* thereafter held (75 Ill. 2d 1, 14):

> "Thus, where there is a failure to object to an instruction, waiver is the rule, and the provision of our Rule 451(c) constitutes an exception which, under the prior decisions of this court, is a limited exception (*People v. Underwood* (1978), 72 Ill. 2d 124, 129-30), to be used to correct 'grave errors' (*People v. Jenkins* (1977), 69 Ill. 2d 61, 66), or to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed (*People v. Joyner* (1972), 50 Ill. 2d 302, 307)."

The court found in *Roberts* that the case there presented was not close factually and the error did not deprive the defendant of a fair trial and affirmed the conviction. See also *People v. Bradford* (1979), 71 Ill. App. 3d 731, 734-35, 389 N.E.2d 636, and *People v. Henderson* (1979), 69 Ill. App. 3d 216, 217, 387 N.E.2d 411.

■■ ■ In the present case, the evidence of defendant's guilt is not close, but overwhelming. He was positively identified by the victim who had ample opportunity to see him in broad daylight before and during the attack. She immediately reported the attack. The physical examination of her which followed, and later scientific analyses of smears taken from her mouth, anus, cervix and vagina proved positive for the presence of human semen, thus fully corroborating her report of the attack. There is strong evidence of defendant having confessed to the rape to two different persons. Against this array of evidence is defendant's denial of having committed the crime or having confessed to it. Under these circumstances, failure to object to the giving of the allegedly defective instruction must be deemed to have been waived by the defense. (*People v. Roberts; People v. Bradford; People v. Henderson.*) Waiver is also found in defendant's failure to allege such error in his motion for a new trial. *People v. Precup* (1978), 73 Ill. 2d 7, 16, 382 N.E.2d 227; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.

Apart from waiver, we do not consider defendant as having been deprived of a fair trial by virtue of the instruction. The instruction in the present case does not state there was evidence that defendant had confessed to performing the two acts of deviate sexual assault with which he was charged in addition to his confession of rape; only that there was evidence of a confession as to the "crime" charged in "the information."

The use of the singular where defendant was charged with three counts could have been more clear; the jury, however, having heard the evidence, could not have been led to believe that he had confessed to more than what the evidence indicated. No "grave error" can be identified in this situation, nor fundamental unfairness. Those circumstances are distinguishable from those obtaining in the cases cited by defendant where certain facts were admitted which did not establish guilt and the legal significance of those facts was cast in doubt by the erroneous statements of law contained in instructions given to the jury. (*People v. Stapleton* (1921), 300 Ill. 471, 133 N.E. 224; *People v. Sovetsky* (1926), 323 Ill. 133, 153 N.E 615; and *People v. Sowell* (1965), 56 Ill. App. 2d 110, 205 N.E.2d 487.) In *Stapleton* and *Sovetsky*, the juries were instructed that the defendants' acknowledgment of certain facts were peremptorily deemed confessions. In *Sowell*, in addition to the peremptory language used with regard to the confession, the instructions failed to include the possibility of legal justification for the killing there involved as shown by the evidence. IPI Criminal No. 3.07, given in the present case, permits the jury to determine, first, whether defendant indeed confessed and, second, what weight, if any, should be given to the confession. The factual significance of what defendant may have admitted was thus left for determination by the jury, whose competence to determine such facts is axiomatic.

Defendant next argues that he was denied a fair trial because of references made by the State's witnesses to prior offenses allegedly committed by him involving the rape of one other woman and an assault and battery upon a second. Defendant filed a motion *in limine* seeking to preclude the prosecution from making reference to either of these alleged crimes, which motion was granted. Defendant maintains that on four occasions testimony came before the jury which informed them of the existence of these other charges and concludes that the references were so prejudicial as to deny defendant a fair trial.

■■ The first of the references occurred during the testimony of Officer Guy Holec, who stated that when he received a radio call and proceeded to the 2300 block of east 72nd Street, he had a conversation there with a police officer and a named woman. Although she was the alleged victim of the assault and battery, the officer made no mention of that fact. He testified that he began a tour of the area which led to defendant's arrest. Defense counsel objected and moved for mistrial, which was denied and the testimony allowed to stand. Defendant claims that because the arrest was effected after the conversation with the woman, it is likely that the jury assumed the woman had been a crime victim. We see nothing in the police officer's statement to indicate that the woman with whom he spoke after receiving the call was an alleged victim of any crime or had any

connection with any offenses committed by defendant. The testimony of the police officer, who merely described the consequential steps taken by him after receiving the call, is normal procedure. It was not prejudicial to defendant in this situation, but was a necessary adjunct to the State's case in explaining why defendant was arrested. See *People v. Byrd* (1976), 43 Ill. App. 3d 735, 742, 357 N.E.2d 174.

Defendant claims that the second time the jury learned of the possibility of other offenses committed by him was during the testimony of Investigator Sykes who told the jury that he asked Stacker if he would try to "identify any victims of his." An objection to this testimony was sustained, the answer was stricken, and the jury was instructed to disregard it. Thereafter, Sykes described Stacker as having again identified the complaining witness "* * * as being one of his, or being a victim * * * of his." At this point, the motion for a mistrial was renewed, but was denied. This answer was stricken and the jury was directed to disregard it.

Finally, on cross-examination, in response to a question about whether any civilian was permitted to talk to Stacker at the police station, Investigator Sykes stated that "one of the other victims" spoke to him. The motion for mistrial was again renewed but was denied. Defendant insists that the damaging effect of the references to "victims" could have been avoided had the prosecutor admonished his witnesses not to refer to any other victims as the motion *in limine* had requested. The jury thereby learned of these inadmissible other offenses which affected their attitude toward Stacker, increasing the likelihood that they would reject his testimony. Defendant asserts that the error could not have been cured by sustaining objections or striking the testimony from the record and that the effect could not have been eradicated from the minds of the jurors.

■ With respect to the first two references to other "victims" made by Sykes during the course of his testimony, we believe that those references were unnecessary and potentially prejudicial. Although the use of the terms "any victims of his" and "one of his, or being a victim of his" were not in direct response to the questions asked by the prosecutor, the witness should have been cautioned to refrain from making advertences to other "victims." We cannot agree, however, that those references, which provide no details as to whether a criminal activity was involved, what offenses they may have been, or on what bases defendant was suspected of committing them, were so substantially prejudicial that their mention could not have been cured by promptly sustaining the objections, striking the answers and directing the jury to disregard those remarks. (*People v. Bean* (1978), 63 Ill. App. 3d 264, 278, 379 N.E.2d 723; *People v. Johnson* (1973), 11 Ill. App. 3d 745, 749, 297 N.E.2d 683.) Defendant's reliance upon *People v. McCray* (1978), 60 Ill. App. 3d 487,

377 N.E.2d 46, and *People v. Curry* (1975), 25 Ill. App. 3d 637, 323 N.E.2d 778, is misplaced. In *McCray*, the prejudicial reference was made by the prosecutor, whereas here it was a witness who responded to questions which did not seek to elicit such answers. In *Curry*, the citation of other crimes committed by the defendant there was direct, positive and descriptive, unlike the references made in the case *sub judice*. Moreover, unlike the present case, the remarks were not stricken despite a defense objection made to them and the trial court's comments invited the jury's consideration of them. In a third case relied upon by defendant, *People v. Smith* (1976), 37 Ill. App. 3d 1016, 347 N.E.2d 257, the offending comments suggesting other specified criminal offenses committed by defendant there were without any support in the record and were held to be of such prejudicial nature that their being stricken was deemed insufficient; however, the questions and comments were made by the prosecutor, unlike the situation existing in the present case.

■ With regard to the response by Sykes to a question asked by defense counsel as to whether any civilian had spoken to defendant on April 6, the State argues that because the statement was elicited by defense counsel, it cannot provide a basis for reversal, citing *People v. Teague* (1966), 66 Ill. App. 2d 338, 345, 214 N.E.2d 522. Defendant contends that because of the prejudicial nature of the statement, it matters not which party elicited it, relying upon *People v. Curry, People v. Richardson* (1977), 48 Ill. App. 3d 307, 362 N.E.2d 1104, and *People v. Williams* (1966), 72 Ill. App. 2d 96, 218 N.E.2d 771. In *Curry*, the offensive statement was unresponsive to the question asked. Further, as noted above, the trial court there denied a defense objection to the statement. In *Richardson*, as in *Curry*, the trial court failed to admonish the jury to disregard the reference, and in *Williams*, the error was compounded by permitting the jury to view photographs of that defendant bearing the legend "Jackson State Prison." Additionally, in *Richardson* and *Williams*, the statements volunteered were not responsive to defense counsel's questions, unlike the answer given by Sykes to defense counsel in the instant case. For the foregoing reasons, in light of all the evidence adduced, the statement cannot be considered prejudicial in thrust and was a direct response to and a result of defense counsel's question.

■■ Defendant next urges that the mittimus in this case reflects convictions and concurrent sentences for two counts of deviate sexual assault and one count of rape whereas in fact defendant was convicted of the rape charge and only one count of deviate sexual assault, since only one verdict form on deviate sexual assault was tendered to the jury. Defendant asks that the cause be remanded to reflect that defendant was convicted of one count of deviate sexual assault and one count of rape. The remarks of the trial judge and the entry of judgment show only that

defendant was found guilty of rape and deviate sexual assault. The mittimus, however, shows convictions on one count of rape and two counts of deviate sexual assault. More importantly, as defendant correctly maintains, even had the jury been given two verdict forms, the second deviate sexual assault count would have had to have been vacated under *People v. Cox* (1972), 53 Ill. 2d 101, 291 N.E.2d 1, and *People v. Manning* (1978), 71 Ill. 2d 132, 374 N.E.2d 200, which held that where offenses arise from a single transaction and are based upon two acts almost simultaneous in time, involving a single victim, each of which acts is among several proscribed by statute, the conduct constitutes a single offense and only one sentence should be imposed. Accordingly, that part of the mittimus reflecting conviction on the second count of deviate sexual assault should be vacated. In all other respects the judgment of the circuit court must be affirmed.

For the reasons stated, the judgment of the circuit court is affirmed. The mittimus is modified by vacating that portion thereof reflecting conviction on the second count of deviate sexual assault.

Affirmed; mittimus modified.

STAMOS, P. J., and PERLIN, J., concur.