THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HURSEY DAVIS, Defendant-Appellant.

First District (4th Division) No. 82—730

Opinion filed February 16, 1984.

James J. Doherty, Public Defender, of Chicago (Robert P. Isaacson, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Marie Quinlivan, and Thomas Wood Flynn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Hursey Davis, appeals his conviction for attempted murder and theft. (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4(a), 16—1(a).) He was sentenced to an extended term of 50 years for the attempted murder, and to a five-year concurrent term for the theft. He raises two issues for review: (1) whether the "personal choice" system of selecting a venire for third district cases which resulted in an all-white venire denied him his constitutional right to a jury drawn from a fair cross-section of the community, and (2) whether he was improperly sentenced to an extended term where the conduct that formed the basis of the attempted murder was used to enhance the penalty.

We affirm as modified.

The facts of this case are unrebutted. Testimony at trial established that on February 13, 1981, at 1:30 a.m., Paul Grudek, a Des Plaines policeman, was on patrol near Elmhurst Road and Dempster in Des Plaines, Illinois. As he drove past a small shopping center, he saw a car in the parking lot. Two men were sitting in the car. Grudek reported the license plate number to his headquarters and left the area. When headquarters reported a "hit," *i.e.*, something was wrong

with the car or the driver, Grudek returned to the lot and talked with the passenger in the car. The latter pointed to a Dunkin Donuts store and said he was waiting for a friend.

Grudek then saw a man walking toward the car. Grudek drove forward and asked the man for his driver's license. After Grudek got out of the police car, the man quickly put down a cup he was carrying. The man reached for his back pocket, his front pocket, and then came at the officer with his right hand and said something the policeman did not understand. Grudek raised his left hand, saw a flash, felt pain in his hip, screamed, and fell into his car. Grudek raised his hands to cover his face, saw another flash, felt pain in his leg, and screamed again.

The man ran back to his car. Grudek fired four times at the driver's side of the other car. The driver and the passenger left the car and ran eastward. At this point in his testimony, Grudek identified defendant as his assailant. Grudek ran after the suspects but stopped when his leg began to hurt. He was taken to a hospital where his wound was treated. Shortly before trial, a bullet was removed from his leg. At the time of trial, Grudek suffered no ill effects from his stomach wounds but did experience sharp pains in his leg, which also had a tendency to "fall asleep." Grudek eventually discovered that the car defendant was driving had been stolen.

Gregory Butts testified that he knew defendant because they both worked at A. M. International in the same area. On December 12, 1980, Butts drove to work. His 1980 Camaro was stolen. Car keys were taken from a coat Butts had left unattended. It was Butts' car that defendant drove at the time of the offense.

Bernie Wolter, an evidence technician for the Des Plaines police, investigated the shooting. He found a baseball cap near a large refuse dumpster that was behind an apartment building. After Wolter "saw shoes inside the dumpster," the suspects were ordered to surrender. Wolter identified defendant as one of the individuals who got out of the dumpster.

Gerald Loconsole, another evidence technician, removed a revolver from behind the dumpster.

Thomas Fahey, an orthopedic surgeon, was on duty at Holy Family hospital on February 13, 1981, and treated Officer Grudek. The victim had gunshot wounds in his right knee and groin. At the time of the shooting, Officer Grudek's wounds were not life threatening and he was administered no pain killers. In March 1981, Fahey approved Grudek's return to full-time regular duty. On October 14, 1981, a bullet fragment was removed from Grudek's right thigh.

After the prosecution rested, the defense called Aug Schwiesow, a Des Plaines policeman, as a witness. Schwiesow investigated the shooting and spoke with defendant. After he was advised of his *Miranda* rights, defendant said, "you don't think I meant to kill the officer? *** If I intended to kill him, I would have shot him between the eyes." This statement was made at 10:30 a.m. on February 13, 1981.

The jury found defendant guilty of attempted murder, aggravated battery, armed violence and theft. The trial court sentenced defendant for attempted murder and theft. At the sentencing hearing, the trial judge stated:

> "The Defendant intended to fire a shot into the body of Grudek who by the evidence clearly indicates was completely helpless at this time, was incapable of protecting himself at this time other than raising his leg and covering his body with his legs.
>
> At this point the act is accompanied by exceptionally brutal and heinous behavior. He fired a second shot into the wounded officer who was not posing any threat, whatsoever, to the Defendant. None.
>
> At that time there was no question he was helpless and yet the second shot was fired. Why was that necessary except for the sole purpose of taking his life or seriously injuring him.
>
> And that I find was exceptionally brutal, and it is, in fact, heinous indicative of wanton cruelty, and that is the finding of this Court, and I find, therefore, it's a basis for an extended term.
>
> And I also find that he is a threat to society, and to protect society, there is a basis for an extended term."

For the attempted murder, defendant was sentenced to 30 years and to an extended term of 20 years, for a total of 50 years. He was sentenced to five years for theft, the sentence to run concurrently with the 50-year sentence. Defendant appeals.

▐ The first issue raised by defendant is whether the "personal choice" system of selecting a venire for third district cases which resulted in an all-white venire denied defendant his constitutional right to a jury drawn from a fair cross section of the community. Defendant argues as follows: He is a black man charged with the attempted murder of a white police officer. His jury was selected from an all-white venire. When defense counsel observed that the venire was all white, he asked the trial court to inquire as to how the jurors were chosen for Des Plaines. The trial court refused. Defense counsel informed the

court that in another case involving a black defendant and white victim which he tried in Des Plaines the trial judge ordered a new trial after questioning the jurors as to how they were selected for Des Plaines. In that case, the jurors had been asked if it would be convenient for them to travel to Des Plaines.

Defendant notes that according to the 1980 census, blacks comprise one-fourth of the population of Cook County, but fewer than 1% of the population of Des Plaines and the surrounding communities. Defendant alleges that giving jurors the option of going out to Des Plaines results in an all-white venire because black jurors prefer not to travel to an area where few blacks live. Defendant cites *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, and *Duren v. Missouri* (1979), 439 U.S. 357, 58 L. Ed. 2d 579, 99 S. Ct. 664, for the proposition that all criminal defendants are entitled to a venire selected from a fair cross section of the community. When a procedure in a selection system results in the underrepresentation of a cognizable group, that system violates the accused's constitutional right to a fair and impartial jury.

In *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692, the Supreme Court declared unconstitutional a Louisiana statute that provided a woman should not be selected for jury service unless she had previously filed a written declaration of her desire to be subject to jury service. The Supreme Court held that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." (*Taylor v. Louisiana* (1975), 419 U.S. 522, 528, 42 L. Ed. 2d 690, 697, 95 S. Ct. 692, 697.) The court acknowledged that the "fair-cross-section principle must have much leeway in application. The States remain free to prescribe relevant qualifications for their jurors and to provide reasonable exemptions so long as it may be fairly said that the jury lists or panels are representative of the community." (*Taylor v. Louisiana* (1975), 419 U.S. 522, 538, 42 L. Ed. 2d 690, 702, 95 S. Ct. 692, 701.) The court imposed "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition [citations]; but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Taylor v. Louisiana* (1975), 419 U.S. 522, 538, 42 L. Ed. 2d 690, 703, 95 S. Ct. 692, 702.

In *Duren v. Missouri* (1979), 439 U.S. 357, 58 L. Ed. 2d 579, 99

S. Ct. 664, the Supreme Court explained the nature of the fair-cross-section inquiry set forth in *Taylor v. Louisiana*. It stated as follows:

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri* (1979), 439 U.S. 357, 364, 58 L. Ed. 2d 579, 586-87, 99 S. Ct. 664, 668.

In the instant case, the trial court refused to ask jurors how they were chosen for Des Plaines, thus precluding defendant from even attempting to establish a *prima facie* violation of the fair-cross-section requirement. However, we do not believe this omission mandates reversal. All errors, constitutional or otherwise, do not require automatic reversal and may be harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828.

In the case at bar, there was overwhelming evidence of defendant's guilt. At trial, the victim positively identified defendant. Defendant was arrested in the vicinity of the crime and within hours of its commission. Defendant himself admitted to shooting the victim. In our opinion, the failure of the trial court to conduct a hearing as to how jurors were selected for Des Plaines does not constitute reversible error.

 The next issue raised by this appeal is whether defendant was improperly sentenced to an extended term. We hold that defendant was improperly sentenced.

Defendant was convicted of attempted murder. An element of that offense is a specific intent to kill. (Ill. Rev. Stat. 1979, ch. 38, par. 8—4(a).) A defendant may be sentenced to an extended term "[w]hen a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(b)(2).) In sentencing defendant to an extended term, the trial judge found the offense brutal and heinous because defendant intended to kill. Thus, the trial court relied on conduct inherent in the offense as an aggravating factor.

We have examined recent cases in which an extended term was upheld. They are distinguishable from the instant case because there

were circumstances other than intent aggravating the offense. In *People v. Sias* (1980), 91 Ill. App. 3d 1095, 415 N.E.2d 618, defendant waited for the victim whom he had known for two years and, after engaging him in conversation, unexpectedly shot the victim twice, once in the side of the face and once in the buttocks as he tried to escape. After the offense, defendant started a rumor as to the involvement and guilt of another person in the offense. In *People v. Turner* (1981), 93 Ill. App. 3d 61, 416 N.E.2d 1149, defendant hit the victim, a 19-year-old woman, in the head or face five times, threatened repeatedly to kill her, and forced her into acts of sexual intercourse and deviate sexual conduct. In *People v. Darnell* (1981), 94 Ill. App. 3d 830, 419 N.E.2d 384, defendant promised to give the victim a horse, lured her to the site of a previously prepared grave and raped her there. As she started to leave, he strangled her, put her body in the grave and covered it with dirt. In *People v. Young* (1981), 96 Ill. App. 3d 426, 420 N.E.2d 1051, the defendant put a gun down the victim's throat. Finally, in *People v. Clark* (1981), 102 Ill. App. 3d 414, 429 N.E.2d 1255, defendant invaded the victims' home, held a gun to the head of a one-year-old child, and threatened to kill him if the parents failed to cooperate. Defendant tied up the husband and forced the wife to commit a deviate sexual act while her husband and son watched. The victims were tied up while defendant ransacked their home for 40 minutes.

In the instant case, defendant shot the victim with a .22-caliber revolver in the abdomen and leg. The victim was able to fire at defendant and chased him until his leg began to hurt. The victim's wounds were cleaned but no bullets were removed when he was initially treated at the hospital. His condition was not life threatening. The victim was able to return to full-time employment the next month.

The cases cited by the State do not support the proposition that an extended term is appropriate in the instant case. In *People v. Bradford* (1979), 71 Ill. App. 3d 731, 389 N.E.2d 636, although defendants argued their sentences were excessive, the appellate court upheld the sentences because defendant had long records of both felonies and misdemeanors. In *People v. Williams* (1980), 90 Ill. App. 3d 524, 413 N.E.2d 60, defendant argued that an extended term could not be imposed for attempted murder. In *People v. Hudson* (1981), 102 Ill. App. 3d 346, 430 N.E.2d 51, the appellate court upheld imposition of an extended term because defendant's conduct was heinous and with no apparent justification where he shot three men, two of whom died.

Since we believe this is not a proper case for imposition of an extended term, we hereby vacate the 20-year extended term imposed by the trial court with the 30-year sentence for the attempted murder remaining.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed as modified.

Affirmed as modified.

LINN, P.J., and ROMITI, J., concur.