THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NAPOLEAN J. TRAMMELL, JR., Defendant-Appellant.

Second District No. 77-501

Opinion filed April 18, 1979.

William R. Beu, of Rockford, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The defendant and Arthur R. McDougle were jointly charged by information for armed robbery. A severance was granted and McDougle was tried separately and convicted, a conviction which we have affirmed. Defendant Trammell was tried before a jury, found guilty of armed robbery and sentenced to 4-8 years in the penitentiary.

Defendant contends that the trial court erred in denying defendant's pretrial motion to suppress his written statement and that it also erred in giving an instruction on "flight".

At approximately 12:18 a.m. on December 16, 1976, a black Buick automobile was driven into the Clark Oil station in Rockford. One of the occupants entered the station and held up the two attendants at gunpoint, taking a coin changer from one of them and approximately $70 in cash. The robber then left the premises, entered the rear door of the Buick, which was then driven away with its lights out for a short distance. A description of the car was telephoned to the police and approximately one minute later the car in question was stopped. Defendant, McDougle and Kevin Hodges were found therein, the defendant being the driver of the vehicle with Hodges in the front passenger seat and co-defendant McDougle in the rear seat. The coin changer was found under the front passenger seat of the car and a .22-caliber handgun was found under the driver's seat. The three men were taken to the police station where the

defendant, Trammell, made a statement to the police. This statement, in essence, was that McDougle talked about getting some money and suggested robbing the Owens station. Defendant told him "No," as he "knew the guy who worked there." Trammell then drove to the Clark station and McDougle and Kevin Hodges got out of the car, were gone 5-10 minutes and returned and, at that time, Trammell saw that McDougle had a gun in his left hand. Trammell further stated that McDougle told him to "drive." This statement was read to the jury. The defendant took the stand and stated that the police officers made up about 95% of the statement and denied stating that "Arthur suggested robbing the Owens station while we were there." Defendant further testified that after he made the statement he was kneed in the groin by one of the officers, and he then subsequently signed the same.

Defendant testified that he was in pain from the alleged battery and his co-defendant, McDougle, as well as a jail inmate, testified that Trammell had made complaints to them of the pain he suffered from the alleged kneeing.

A pretrial motion to suppress the statement was made by the defendant on the grounds that physical force was applied to coerce a statement from him. Defendant contends that it became the duty of the State, by clear and convincing proof, to establish the injuries were not the result of police brutality, and has cited *People v. Davis* (1966), 35 Ill. 2d 202, 220 N.E.2d 222. We do not find *Davis* to be controlling. In *Davis* the corroboration of the injuries was substantiated by an official record of the jail showing such a complaint of the defendant. He was examined by a physician who testified that the defendant's bruises on his chest and arm were due to trauma. The court in *Davis* held that he was injured while in police custody, the injuries were not explained by the State and that he was held in custody for a week without a hearing. However, in the case before us, the only testimony as to the alleged injuries was that of the defendant himself, a jail inmate and a co-defendant. The police officer, under oath, denied kneeing the defendant in the groin.

■■ In the case before us the defendant had made the statement in question, admitted into evidence as State's Exhibit No. 8, prior to the alleged injury. The defendant testified that after he had made the statement the officer then kneed him in the groin in order to get him to sign it. It can thus be seen that, even were the contentions of the defendant in this regard true, he had already made the statement implicating himself in the armed robbery prior to the time of the alleged brutality. We will not disturb the finding of the trial court in the admission of this statement, as that court is in a far better position to determine the credibility of the witnesses in this regard, particularly in view of the fact

that the statement was made prior to the alleged incident. We find this contention to be without merit.

The trial court, over the objection of the defendant, gave the following instruction, not contained in Illinois Pattern Jury Instructions, which was tendered by the State:

"The period of time and activities involved in escaping to a place of safety are part of the commission of a crime."

The defendant submits that this instruction was a "flight" instruction and that under the circumstances of this case the giving of the same was erroneous. In support of this argument he states that the Illinois Judicial Conference Committee on Pattern Instructions in its comments following Illinois Pattern Jury Instructions, recommended that no instruction on flight be given in a criminal case.

Based on a careful examination of the instruction at issue, and the evidence presented in this case, we find that the "flight" label applied by the defendant to the instruction is inappropriate. There is no doubt that the words of that instruction were lifted verbatim from the opinion of the supreme court in *People v. Hickman* (1974), 59 Ill. 2d 89, 94, 319 N.E.2d 511, 513, where that language defined the extent or scope of a crime itself which lead to the application, in that case, of the felony murder rule. We find that the intent of the court was quite clear to include the "getaway" within the scope of most any crime. In a sense, it is part of the *res gestae* of the crime itself. In reviewing this language we do not agree with the defendant that the involvement of the felony murder rule in *Hickman* somehow makes the words of the court inapplicable to other crimes where murder did not occur. We feel that the converse is true. If there exists any latitude to the scope of what constitutes the *res gestae* of a crime, then such latitude would most likely be applied in the case of felony murder where the possible consequences to the defendant are enormous.

■■ In the case at hand the instruction given was necessary to make clear to the jury that the defendant would be as guilty of the armed robbery as McDougle, the man who actually held the gun, if they found beyond a reasonable doubt that the defendant knowingly attempted to convey McDougle to a place of safety after the crime. In the light of this necessity, we consider this instruction to be proper. Even if we were to consider this language to be truly a "flight" instruction, we would find that it was properly submitted.

In the case of *People v. Henderson* (1976), 39 Ill. App. 3d 502, 348 N.E.2d 854, Justice Stouder, in a special concurrence, wrote a detailed analysis of the rules applicable to "flight" instructions in Illinois. As to an instruction based on the defendant's act of leaving the scene of the crime,

64

Justice Stouder found that the following factors must be present to supply the necessary evidentiary basis for a flight instruction:

"(1) The defendant must leave the scene of the crime; (2) The defendant must know or have reason to know that a crime has been committed and that he is or may be suspected of committing that crime [citations]; and (3) the defendant's act of departure must be for the purpose of evading arrest. [Citations.]

Once these factors are present, a flight instruction, based on the defendant's departure, may be given. From the evidence of flight, the jury may then infer consciousness of guilt and consider this circumstance in determining the guilt or innocence of the defendant." (39 Ill. App. 3d 502, 512, 348 N.E.2d 854, 862-63.)

Based on the evidence adduced at trial, we specifically find that all three factors were properly present in the case before us.

On the basis of the foregoing analysis, we affirm.

Affirmed.

WOODWARD and SEIDENFELD, JJ., concur.