901 A.2d 208

**Warren THOMPSON**

v.

**STATE of Maryland.**

**No. 110, Sept. Term, 2005.**

Court of Appeals of Maryland.

June 20, 2006.

292

Brian M. Saccenti, Assistant Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, for petitioner.

Gregory D'Alesandro, Assistant Attorney General (J. Joseph Curran, Jr., Atty.Gen. of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

The case *sub judice* presents us with the issue of whether a jury instruction on flight should ever be given in a criminal

case. Although we determine that flight instructions are not *per se* improper, we conclude, nevertheless, that the trial judge abused his discretion in the case at bar in providing a flight instruction to the jury.

### *Facts*

On July 17, 2002, Noah Gottesman, William Beaver, and Bradley Kelly were walking back to their hotel near the Inner Harbor in Baltimore City after dinner. On the 1300 block of East Pratt Street, two men on bicycles approached the trio. One of the men said, "I'll make this easy. Put your wallets on the ground." Messrs. Gottesman, Beaver, and Kelly did not stop. The would-be robber pulled a gun, and Messrs. Gottesman, Beaver, and Kelly ran as at least five shots were fired, one of which hit Mr. Gottesman in the right arm. At the end of the block, two men in a sports utility vehicle stopped and offered to take Messrs. Gottesman, Beaver, and Kelly to the hospital, an offer which was accepted.

Police officers met them at the hospital. After interviewing Messrs. Gottesman, Beaver, and Kelly, the officers broadcasted that they were looking for an African–American male with corn rows, who was approximately twenty-five years old, wearing a baggy white t-shirt and jeans or jean shorts on a bicycle accompanied by another person.

Detective Frank Mundy arrived at the location of the shooting and saw Warren Thompson, the Petitioner, who fit the broadcast description, on a bicycle. Detective Mundy ran toward him, identified himself as a police officer, and yelled for him to stop. Mr. Thompson saw Detective Mundy and continued to pedal faster away from him. Detective Mundy lost sight of him, but within five minutes, other police officers caught Mr. Thompson within a mile. When he was apprehended, the police recovered a significant quantity of cocaine on Mr. Thompson.

Mr. Thompson was charged with three counts each of attempted first degree murder, attempted second degree murder, first degree assault, second degree assault, use of a

handgun in the commission of a felony or crime of violence, reckless endangerment, and one count each of wearing, carrying, or transporting a handgun illegal possession of a regulated firearm, possession of a controlled dangerous substance with intent to manufacture and distribute, and possession of a controlled dangerous substance

At a pretrial hearing held on July 15, 2003 in the Circuit Court for Baltimore City, Mr. Thompson argued that, due to some anomalies in the chain of custody of the cocaine recovered from him when he was arrested, the drugs, the results of the chemical analysis conducted by the police and any statements made by Mr. Thompson concerning the drugs should be suppressed. The State opposed Mr. Thompson's motion and asserted that the drugs were admissible, regardless of any issues in the chain of custody, because Mr. Thompson made statements to the police acknowledging his possession of the drugs. The Circuit Court took the matter under advisement and two days later, immediately prior to the impaneling of the jury, ruled that the cocaine, the results of the chemical analysis, and those portions of Mr. Thompson's statement to police regarding his possession of the drugs were inadmissible. The court also dismissed the charges arising out of his possession of controlled dangerous substances.

During the trial, the prosecution called Messrs. Gottesman, Beaver, and Kelly, each of whom testified concerning the events on July 17, 2002 and identified Mr. Thompson as the shooter. The prosecution also called Baltimore City Detective Frank Mundy, who interviewed the victims and Mr. Thompson after his arrest. Detective Mundy testified that Mr. Thompson fled on his bicycle when Detective Mundy approached and identified himself as the police. The prosecution also played a redacted version of a tape recording of Detective Mundy and Baltimore City Detective Mike Debord's conversation with Mr. Thompson. The defense called Detective Debord, who testified concerning Mr. Gottesman's failure to identify Mr. Thompson as the shooter after viewing a photo array. Mr. Thompson also called Mr. Joseph Harant, a criminalist with the Baltimore City Police Department Laboratory in the

Trace Analysis Unit, who testified that there was no gunshot residue on Mr. Thompson's hands.

At the close of the case, included in the instructions given to the jury was the following instruction on flight:

> A person's flight immediately after the commission of a crime or after being accused of committing a crime is not enough by itself to establish guilt, but it is a fact that may be considered by you as evidence of guilt. Flight under these circumstances may be motivated by a variety of factors, some of which are fully consistent with innocence.

> You must first decide whether there is evidence of flight. If you decide there is evidence of flight, you must then decide whether the Defendant's flight shows consciousness of guilt.

On July 21, 2003, the jury acquitted Mr. Thompson of the counts of first degree assault and second degree assault relating to Messrs. Beaver and Kelly, but was unable to reach a verdict on the remaining counts of attempted murder, assault, use of a handgun in the commission of a crime of violence, reckless endangerment, wearing, carrying, or transporting a handgun, and illegal possession of a regulated firearm with respect to Messrs. Beaver and Kelly. The jury was unable to reach a verdict on any of the charges concerning Mr. Gottesman.

The State elected to retry Mr. Thompson only with respect to the charges relating to Mr. Gottesman, which included one count of: attempted first degree murder, attempted second degree murder, first degree assault, second degree assault, reckless endangerment, use of a handgun in the commission of a felony or crime of violence, wearing, carrying, or transporting a handgun, and possession of a regulated firearm after having been convicted of a disqualifying crime. As with the first trial, the tape recording of Mr. Thompson's statements to the police that he fled was played again for the jury and a transcript of the statement also was provided, without objection. The State also called Detective Mundy to testify, which he did as follows:

[THE STATE]: Where were you when you first saw the defendant?

[DETECTIVE MUNDY]: I was in the 1100 block of East Pratt Street.

[THE STATE]: Where was he?

[DETECTIVE MUNDY]: He was on a bicycle heading—I guess it would be westbound on the 1100 block of East Pratt Street.

[THE STATE]: If you could help us out, is that towards the Inner Harbor or away from the Inner Harbor?

[DETECTIVE MUNDY]: It would be towards the Inner Harbor.

\* \* \*

[THE STATE]: What did you personally do?

[DETECTIVE MUNDY]: I attempted to approach the defendant.

[THE STATE]: Okay. Did you walk toward him?

[DETECTIVE MUNDY]: Well, I had to run up to him because he was pedaling a bicycle away.

[THE STATE]: Okay. Did you say, "Stop, police"?

[DETECTIVE MUNDY]: Well, what happened was, when I started running up towards him, he turned around and saw me, and he started to pedal away faster, and I did yell at that point to stop.

[THE STATE]: Okay. Before he saw you—I mean, before he started to pedal away, when you first approached him, did you have your gun drawn?

[DETECTIVE MUNDY]: No.

[THE STATE]: Did you say, "Stop, police"?

[DETECTIVE MUNDY]: No, I don't think I did.

[THE STATE]: Okay. As he pedaled away, what did you do?

[DETECTIVE MUNDY]: What, after he saw me?

[THE STATE]: Yes.

[DETECTIVE MUNDY]: After he saw me and he pedaled away, I called it out to try to get him stopped. I did tell him at that point I was the police, to stop.

\* \* \*

[THE STATE]: Detective, before you saw the defendant fleeing on the bicycle, was he under arrest at that time?

[DETECTIVE MUNDY]: No.

[THE STATE]: Okay. And how do you know that he heard you?

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: If you know how you know, or if you just assumed it, you can tell us that. Overruled.

[DETECTIVE MUNDY]: Well, like I said, I ran towards. He saw me. He started pedaling faster away and I yelled, "Stop, police!" I don't know for certain that he heard me, but . . .

Mr. Thompson did not object to the admission of the evidence concerning his flight from police, although he did object to the form of the questions.

During the bench conference preceding the jury instructions, the State requested a flight instruction and the following colloquy occurred:

[THE STATE]: The State would also ask for [Maryland Pattern Jury Instruction—Criminal] 3:24,[1], which is flight of the defendant.

[DEFENSE COUNSEL]: I would like to be heard on that, Your Honor.

---

1. Maryland Pattern Jury Instruction—Criminal 3:24 provides:

 A person's flight [concealment] immediately after the commission of a crime, or after being accused of committing a crime, is not enough by itself to establish guilt, but it is a fact that may be considered by you as evidence of guilt. Flight [concealment] under these circumstances may be motivated by a variety of factors, some of which are fully consistent with innocence. You must first decide whether there is evidence of flight [concealment]. If you decide there is evidence of flight [concealment], you then must decide whether this flight [concealment] shows a consciousness of guilt.

THE COURT: Sure.

[DEFENSE COUNSEL]: Your Honor, the previous motion suppressed drugs that allegedly were found on Mr. Warren's person—Mr. Thompson's person—and in his statement, which was redacted from the jury, he says basically, "I ran because I was dirty." That was redacted. Now, if you let this flight instruction in front of the jury, they're going to think that he ran because he committed the shooting, not perhaps the real reason: he ran because he was dirty. That was kept from the jury and I think this is misleading, given the facts that the jury actually did hear.

THE COURT: Well, the instruction says, "Flight under these circumstances may be motivated by a variety of factors, some of which are fully consistent with innocence," or at least innocence of this crime.

[DEFENSE COUNSEL]: I can't think, even though you are reading that in a light that's helpful to the defense, if any defense attorney has ever asked for a flight instruction, Your Honor. I definitely believe—

THE COURT: No, why would the defense ask for a flight instruction. No, I know, that's true.

[DEFENSE COUNSEL]: No, I think the State wants this because it's going to say he ran because he's the shooter and that's not—

THE COURT: Well, that is a permissible inference that they could draw from the evidence, but there's other inferences and that's explained right in there. I mean, frankly, it's a judgment call. I mean, you could have let go into evidence this other issue as an explanation for why he ran away. I mean, you balance the equities and you make a decision.

[DEFENSE COUNSEL]: I just said if this jury instruction is taken in the light of the facts this jury has actually heard, it's misleading.

THE COURT: I don't think so. Overruled.

The court gave the following instruction to the jury:

A person's flight or concealment immediately after the commission of a crime or after being accused of committing a crime is not enough to establish guilt, but it is a fact that may be considered by you as evidence of guilt.

Flight under these circumstances may be motivated by a variety of factors, some of which may be fully consistent with innocence. You must first decide whether there's evidence of flight. If you decide there's evidence of flight, you must then decide whether this flight shows a consciousness of guilt.

At the close of the instructions to the jury, the defense counsel objected to the giving of the flight instruction.

The jury in the second trial acquitted Mr. Thompson of attempted first degree murder and attempted second degree murder, but convicted him, with respect to Mr. Gottesman, of first degree assault, second degree assault, reckless endangerment, use of a handgun in the commission of a felony or crime of violence, wearing, carrying, or transporting a handgun, and possession of a regulated firearm after having been convicted of a disqualifying crime. On May 14, 2004, the court denied Mr. Thompson's motion for a new trial and sentenced him to a forty-year term of imprisonment, with the first five years without eligibility for parole. On May 20, 2004, Mr. Thompson noted his appeal.

The Court of Special Appeals, in a reported opinion, concluded that flight instructions given in criminal cases are not *per se* improper and have consistently been upheld by this Court. *Thompson v. State*, 164 Md.App. 652, 673–74, 884 A.2d 678, 691 (2005). Moreover, the intermediate appellate court determined that the evidence of flight was sufficient to support the giving of the instruction in the present case.

On November 18, 2005, Mr. Thompson filed a petition for writ of certiorari in this Court and presented the following issues for our review:

1. Should this Court join the growing number of jurisdictions which have held that a flight instruction should never be given in a criminal case?

2. Assuming *arguendo,* that it is not improper *per se* to give a flight instruction, did the trial court err in instructing the jury that it could consider petitioner's flight as evidence of guilt where the court knew of a probable alternative explanation for the flight of which the jury was unaware?

On January 9, 2006, we granted the petition and issued the writ. *Thompson v. State,* 390 Md. 500, 889 A.2d 418 (2006). We determine that flight instructions are not *per se* improper in criminal cases, but we conclude, however, that the trial judge abused his discretion in providing a flight instruction to the jury in the case at bar. Therefore, we reverse the judgment of the Court of Special Appeals.

### Discussion

Mr. Thompson argues that there is no legitimate reason for instructing jurors that they can consider flight as evidence of guilt. He asserts that the other jury instructions concerning evidence adequately inform the jury that it may make inferences from circumstantial evidence. According to Mr. Thompson, when a trial court gives a jury the flight instruction, that evidence is impermissibly emphasized by the court, which results in the prosecution receiving an unfair advantage. He further contends that giving a flight instruction is misleading because it improperly strengthens the questionable value of evidence of flight. Mr. Thompson argues that the flight instruction is inherently confusing for jurors because they would most likely not understand the distinction between "evidence of guilt" and "not enough to establish guilt." Therefore, Mr. Thompson urges this Court to join with those jurisdictions that have disallowed the use of flight instructions.

Alternatively, Mr. Thompson asserts that if this Court were to conclude that it is not *per se* improper to give a flight instruction, the trial court should not have given the instruction in the present case. He claims that because the parties and the court knew of circumstances that did not support the

inference that Mr. Thompson fled because he was guilty of the shooting, the trial court should not have encouraged that jury to make such an inference. Mr. Thompson argues that the evidence presented in the case *sub judice* does not support the giving of the flight instruction.

Conversely, the State contends that this Court should reaffirm its acceptance of flight instructions under proper circumstances and remain in agreement with the majority of other jurisdictions. Moreover, the State argues that the trial judge did not abuse his discretion by instructing the jury on flight. Furthermore, the State notes that Thompson did not object to the introduction of the evidence of his flight and therefore, the record contained sufficient evidence to support a flight instruction.

### *Flight Instructions Are Not Per Se Improper*

■ Mr. Thompson urges this Court to overrule our precedent approving jury instructions on flight and determine that such instructions are *per se* improper. We decline to do so.

Maryland Rule 4–325 governs the giving of instructions to the jury. Specifically, Section (c) of the Rule addresses instructions that are requested by the parties; that section provides:

> (c) **How given.** The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

Md. Rule 4–325. We have interpreted Rule 4–325(c) as

> requir[ing] the trial court to give a requested instruction under the following circumstances: (1) the requested instruction is a correct statement of the law; (2) the requested instruction is applicable under the facts of the case; and (3) the content of the requested instruction was not fairly covered elsewhere in the jury instruction actually given.

Md. Rule 4–325(c); *Evans v. State*, 333 Md. 660, 691, 637 A.2d 117, 132, *cert. denied*, 513 U.S. 833, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994).

*Ware v. State*, 348 Md. 19, 58, 702 A.2d 699, 718 (1997). Only the first factor is independent of the facts of the case in which it is given, which results in it being determinative of whether the instruction on flight is *per se* improper. Therefore, we shall examine whether the flight instruction as given in the case *sub judice*, which is identical to Maryland Pattern Jury Instruction—Criminal 3:24, accurately reflects the law of the State of Maryland.

▬ The instruction at issue in the present case provided: A person's flight or concealment immediately after the commission of a crime or after being accused of committing a crime is not enough to establish guilt, but it is a fact that may be considered by you as evidence of guilt. . . .

Flight under these circumstances may be motivated by a variety of factors, some of which may be fully consistent with innocence. You must first decide whether there's evidence of flight. If you decide there's evidence of flight, you must then decide whether this flight shows a consciousness of guilt.

We have consistently held that although "[f]light by itself is not sufficient to establish the guilt of the defendant," *Sorrell v. State*, 315 Md. 224, 228, 554 A.2d 352, 353 (1989), it "is a factor that may be considered in determining guilt." *Davis v. State*, 237 Md. 97, 105, 205 A.2d 254, 259 (1964). Moreover, we have noted that flight may be indicative of a consciousness of guilt by the defendant. *Westcoat v. State*, 231 Md. 364, 368, 190 A.2d 544, 546 (1963). Concomitantly, we have recognized that a defendant's flight may be motivated by reasons unconnected to the offense at issue in the case and that the determination as to the motivation for flight is properly entrusted to the jury. *See Hunt v. State*, 312 Md. 494, 508–09, 540 A.2d 1125, 1132 (1988). Thus, based on the foregoing cases, the instruction is substantively accurate with respect to the law of the State of Maryland on flight.

We have consistently upheld the propriety of flight instructions.[2] *See e.g., Sorrell v. State*, 315 Md. 224, 554 A.2d 352

---

**2.** Our position has been consistent with the majority of both federal and State jurisdictions, which allow flight instructions in appropriate circumstances where the evidence supports an inference of consciousness of guilt. *See e.g., United States v. Otero–Mendez*, 273 F.3d 46, 54 n. 3 (1st Cir.2001) (determining that the trial court's jury instruction on flight was not an abuse of discretion); *United States v. Al–Sadawi*, 432 F.3d 419, 424 (2d Cir.2005) (holding that a flight instruction is appropriate only if there exists sufficient evidence for the jury to infer consciousness of guilt from the conduct); *United States v. Johnson*, 199 F.3d 123, 128–29 (3d Cir.1999) (noting that where there is evidence of the defendant's flight, the giving of a flight instruction is entrusted to the sound discretion of the trial court); *United States v. Obi*, 239 F.3d 662, 665 (4th Cir.2001) (concluding that flight instructions are proper under certain circumstances); *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir.1977) (announcing the generally accepted standard that a flight instruction is proper if the evidence supports four inferences: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."); *United States v. Oliver*, 397 F.3d 369, 376–77 (6th Cir.2005) (holding that flight instructions are proper when there is evidence of flight and such evidence supports an inference of guilt); *United States v. Clark*, 45 F.3d 1247, 1250 (8th Cir.1995) ("[W]e have squarely held that [flight] instructions may be given when warranted by the evidence"); *United States v. Blanco*, 392 F.3d 382, 395–96 (9th Cir.2004) (determining that flight instructions are appropriate where the evidence supports certain inferences); *Tuttle v. State of Utah*, 57 F.3d 879, 891 (10th Cir.1995) (concluding that flight instructions are proper when the evidence supports them); *United States v. Wright*, 392 F.3d 1269, 1277–78 (11th Cir.2004) (same). *See also Ex Parte Clark*, 728 So.2d 1126, 1135–37 (Ala.1998) (observing that flight instructions are proper when supported by the evidence in the record); *Merrill v. State*, 423 P.2d 686, 697 (Alaska 1967) ("[T]he trial court was warranted in giving a flight instruction and that the instruction was not erroneous"); *State v. Weible*, 142 Ariz. 113, 688 P.2d 1005, 1008 (1984) ("The amount of evidence requires to justify the giving of [a flight] instruction is well established. A court should be able to reasonably infer from the evidence that the defendant left the scene in a manner which obviously invites suspicion or announces guilt."); *Russell v. State*, 240 Ark. 97, 398 S.W.2d 213, 215 (1966) (holding that there is "no merit in the appellants' objection[ ] to [the] commonplace instruction[ ] concerning the inference of guilt that may be drawn from the defendants' flight"), *disapproved on other grounds by Lakeside v. Oregon*, 435 U.S. 333, 336 n. 3, 98 S.Ct. 1091, 1093 n. 3, 55 L.Ed.2d 319, 323 n. 3 (1978); *People v. Bradford*, 14 Cal.4th 1005, 60 Cal.Rptr.2d 225, 929 P.2d 544, 575 (1997) ("[A] flight instruction is 'proper where the evidence shows that

the defendant departed the crime scene under circumstances suggesting that this movement was motivated by a consciousness of guilt' "); *State v. Wright*, 198 Conn. 273, 502 A.2d 911, 916 (1986) (stating that an instruction that did not include "all the possible innocent explanations for his flight," was not erroneous and "[t]he [trial] court was not required to enumerate all the possible innocent explanations offered by the defendant. The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous."); *Thomas v. State*, 467 A.2d 954, 958 (Del.1983) ("A flight instruction is proper where there is evidence of flight or concealment *and* the evidence reasonably supports an inference that defendant fled because 'of a consciousness of guilt and a desire to avoid an accusation based thereon, or for some other reason' " (emphasis in original)); *Territory v. Leong Kun*, 29 Haw. 90, 96 (1926) (holding that the flight instruction was proper); *People v. Trammell*, 71 Ill.App.3d 60, 27 Ill.Dec. 315, 389 N.E.2d 1, 3 (1979) (determining that a flight instruction may be given under the following circumstances: "(1) The defendant must leave the scene of the crime; (2) the defendant must know or have reason to know that a crime has been committed and that he is or may be suspected of committing that crime; and (3) the defendant's act of departure must be for the purpose of evading arrest."); *State v. McIntyre*, 381 So.2d 408, 411–12 (La.1980) (concluding that a flight instruction properly informed the jury that it "must either consider@ that evidence introduced is probative of the defendant's guilt or that it is not"); *Comm. v. Toney*, 385 Mass. 575, 433 N.E.2d 425, 432 (1982) ("We think that a judge should instruction that jury (1) that they are not to convict a defendant on the basis of evidence of flight or concealment alone, . . . and (2) that they may, but need not, consider such evidence as one of the factors tending to prove the guilt of the defendant."); *People v. Johnson*, 171 Mich.App. 801, 430 N.W.2d 828, 829 (1988) (holding that the flight instruction was proper where there was sufficient evidence to support it); *State v. McLaughlin*, 250 Minn. 309, 84 N.W.2d 664, 671–72, 674 (1957) (stating that where sufficient evidence of flight is introduced, a trial court may give a qualified instruction allowing for the inference of guilt); *Shaw v. State*, 915 So.2d 442, 447 (Miss.2005) ("[A] flight instruction is appropriate only where the flight is unexplained and somehow probative of guilt or guilty knowledge"); *State v. Lincoln*, 183 Neb. 770, 164 N.W.2d 470, 472 (1969) (concluding that the flight instruction was proper); *Carter v. State*, 121 P.3d 592, 599 (Nev.2005) ("It is proper to instruct on flight where it is reasonable to infer [guilt] from the evidence presented."); *State v. Littlefield*, 152 N.H. 331, 876 A.2d 712, 716 (2005) ("An instruction on flight is properly given if the jury could reasonably infer that the defendant's flight reflected consciousness of guilt, and flight requires neither the physical act of running nor the reaching of a faraway haven."); *State v. Mann*, 132 N.J. 410, 625 A.2d 1102, 1107 (1993) ("In those instances in which the trial court deems the evidence of flight admissible, it must instruct the jury carefully regarding the inferences the jury may draw from that evidence."); *State v. Walton*, 43 N.M. 276, 92 P.2d 157, 160 (1939) (holding a flight instruction to be proper where evidence supported it); *People v. Robinson*, 10 A.D.3d 696, 781 N.Y.S.2d 781, 782 (N.Y.App.Div.2004) ("There was sufficient

(1989); *Young v. State,* 234 Md. 125, 130, 198 A.2d 91, 94 (1964). As we have previously noted, "We are cognizant of the importance of *stare decisis* and the resulting certainty, definition, and dependability it gives the law." *Willey v. State,* 328 Md. 126, 137, 613 A.2d 956, 961 (1992), quoting *B & K Rentals v. Universal Leaf,* 324 Md. 147, 158, 596 A.2d 640, 645 (1991); *Conteh v. Conteh,* 392 Md. 436, 448, 897 A.2d 810, 817 (2006) (discussing the application of *stare decisis* ); *Livesay v. Baltimore County,* 384 Md. 1, 15, 862 A.2d 33, 41 (2004) (observing that under *stare decisis* principles "departure from the rule should be the extraordinary case").

---

factual predicate to support a jury instruction on the concept of flight as evidence of consciousness of guilt."); *State v. Pendleton,* 622 S.E.2d 708, 710 (N.C.Ct.App.2005) ("So long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged, the instruction is properly given. The fact that there may be other reasonable explanations for the defendant's conduct does not render the instruction improper."); *State v. Carter,* 50 N.D. 270, 195 N.W. 567, 571 (1923) ("The [flight] instruction correctly stated the law, and the evidence justified such instruction."); *State v. Sheppard,* 164 Ohio App.3d 372, 842 N.E.2d 561, 569 (2005) (determining that the evidence was sufficient to support the trial court's decision to give flight instruction); *Jones v. State,* 128 P.3d 521, 539 (holding that the flight instruction was appropriate), *reh'g granted,* 132 P.3d 1 (Okla.Crim.App.2006); *Comm. v. Rios,* 554 Pa. 419, 721 A.2d 1049, 1056–57 (1998) (concluding that the evidence was sufficient to justify giving the flight instruction); *State v. Mendoza,* 889 A.2d 153, 163 (R.I.2005) ("[T]rial justice's decision to give a flight instruction simply depends upon whether 'a reasonable jury could infer consciousness of guilt' from a totality of evidence produced at trial."); *State v. Burns,* 979 S.W.2d 276, 289–90 (Tenn.1998) (Evidence sufficient to support a jury instruction on flight requires both "a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community or a leaving of the community for parts unknown."); *State v. Bales,* 675 P.2d 573, 575 (Utah 1983) (holding that there was sufficient evidence to warrant a flight instruction); *State v. Pelican,* 160 Vt. 536, 632 A.2d 24, 28 (1993) (providing that "giving an instruction on flight is fully consistent with the law of this state"); *Clagett v. Comm.,* 252 Va. 79, 472 S.E.2d 263, 271 (1996) ("Flight following the commission of a crime is evidence of guilt, and the jury may be so instructed."); *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879, 885 (1982) (concluding that giving of flight instruction is not reversible error); *State v. Winston,* 120 Wis.2d 500, 355 N.W.2d 553, 556 (1984)

In support of his position that the instruction should be held *per se* improper, Mr. Thompson argues, nonetheless, that in giving the flight instruction to the jury, the judge is impermissibly emphasizing one piece of circumstantial evidence over the remainder of the prosecution's case. Moreover, he asserts that the general instructions on direct and circumstantial evidence and what constitutes evidence, which were given in this case, adequately address the issues delineated in the flight instruction.[3] We disagree.

■■ As Judge Learned Hand observed in *United States v. Heitner*, 149 F.2d 105, 107 (2d Cir.1945), "flight is a circumstance from which . . . everyone in daily life inevitably would infer (guilt)," so that the instruction serves as a reminder to the jury that it would be inappropriate to presume guilt from the act of flight. Similarly, the United States Court of Appeals for the District of Columbia Circuit in *Miller v. United States*, 320 F.2d 767 (D.C.Cir.1963), described the purpose of the instruction as, "to caution against the dangers of drawing conclusions from superficial consideration of experience." *Id.* at 773, n. 14. We agree and conclude that the instruction does not impermissibly emphasize the importance of evidence of flight; rather, it attempts to insure that the jury does not imbue evidence of flight with more weight than it deserves.

---

(holding that the admission of evidence and giving of a flight instruction are entrusted to the sound discretion of the trial court).

**3.** Maryland Pattern Jury Instructions—Criminal 3:00 provides in pertinent part:

You may draw any reasonable inferences or conclusions from the evidence that you believe to be justified by common sense and your own experiences.

Maryland Pattern Jury Instructions—Criminal 3:01 provides:

There are two types of evidence—direct and circumstantial. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. No greater degree of certainty is required of circumstantial evidence than of direct evidence. In reaching a verdict, you should weigh all of the evidence presented, whether direct or circumstantial. You may not convict the defendant unless you find that the evidence, when considered as a whole, establishes guilt beyond a reasonable doubt.

■ The substance of the flight instruction is not adequately covered by the two other instructions highlighted by Mr. Thompson. The evidence instruction, Maryland Pattern Jury Instructions—Criminal 3:00, informs jurors that they "may draw any reasonable inferences or conclusions from the evidence that [they] believe to be justified by common sense and [their] own experiences;" likewise, the instruction on circumstantial evidence, Maryland Pattern Jury Instructions—3.01, explains to the jury that circumstantial evidence should be given the same weight as direct evidence. Although these instructions address the issue of the jury's ability to draw inferences from the evidence and the weight to be given to circumstantial evidence, they do not encompass the entirety of the flight instruction's admonition to the jury that the defendant's flight may not have been motivated by a consciousness of guilt, which might be the general conclusion of people as noted in *Heitner*, 149 F.2d at 107. Therefore, the general jury instructions regarding inferences from the evidence generally, and the appropriate weight to be given to circumstantial evidence in particular, are not adequate to render the flight instruction superfluous.

■ Moreover, there are circumstances in which flight evidence and a flight instruction are necessary. In *Sorrell*, we concluded that the trial court properly instructed the jury on the permissible inferences from the defendant's flight in the midst of his trial where the circumstances indicated that the absence was voluntary and an attempt to evade conviction. 315 Md. at 229–32, 554 A.2d at 354–55. We further concluded that the state could discuss the defendant's absence to avoid prejudice to its case, and as such the court could, in its discretion, give the instruction. *Id.* at 229, 554 A.2d at 354. Flight evidence and a jury instruction on flight also are particularly appropriate in circumstances where a defendant places his or her mental status at the time that the crime was committed in issue. In *People v. Moon*, 37 Cal.4th 1, 32 Cal.Rptr.3d 894, 117 P.3d 591 (2005), Richard Moon was charged with the first degree murders of his former girlfriend and her mother. *Id.* at 596. At trial, the prosecution intro-

duced evidence that Moon observed police converging on his motel room and fled. *Id.* at 598. When police arrested him, Moon confessed to killing the two women. *Id.* at 597. The trial court instructed the jury that it could "consider defendant's flight after the crime as circumstantial evidence of his guilt or innocence." *Id.* at 608. Before the California Supreme Court, Moon argued that the court erred in giving the instruction because the inference "that he suffered a guilty conscience and thus probably killed the victims, was irrelevant because he admitted having killed them." *Id.* Although he admitted to the murders, Moon contested his mental state at the time of the killings. *Id.* The California Supreme Court determined that

> [e]ven if he conceded at trial his guilt of some form of criminal homicide, 'the prosecution is still entitled to prove its case and especially to prove a fact so central to the basic question of guilt as intent.' We have previously rejected the notion that the flight instruction is improper when an accused concedes the issue of identity and merely contests his mental state at the time of the crime.

*Id.* Therefore, the court concluded that flight instructions are proper not only because flight evidence is relevant to the ultimate issue of guilt, but also because it is circumstantial evidence of intent. *Id.* Thus, because flight evidence may be probative with respect to intent as well as guilt, we decline to hold that giving a flight instruction is *per se* improper.

The position urged upon this Court by Mr. Thompson has been adopted by a minority of our sister states. *See Hadden v. State*, 42 P.3d 495, 508 (Wyo.2002) (determining that the giving of a flight instruction is reversible error because it impermissibly emphasizes a single piece of circumstantial evidence); *Dill v. State*, 741 N.E.2d 1230, 1233 (Ind.2001) (concluding that the flight instruction should not be given because it is "confusing, unduly emphasizes specific evidence, and is misleading"); *State v. Hall*, 297 Mont. 111, 991 P.2d 929, 937 (1999) (holding that flight instructions should not be given because of the limited probative value of the evidence); *Fenelon v. State*, 594 So.2d 292, 295 (Fla.1992) (determining that

"the better policy in future cases where evidence of flight has been properly admitted is to reserve comment to counsel" due to the disagreement over what kind and what amount of evidence will support the giving of a flight instruction); *Renner v. State*, 260 Ga. 515, 397 S.E.2d 683, 686 (1990) (holding that "while the state may offer evidence of and argue flight, it shall be reversible error for a trial court in a criminal case to charge the jury on flight" because the instruction could be interpreted by the jury as implying that the trial court believes there to be evidence of flight that indicates a consciousness of guilt of the defendant); *State v. Cathey*, 241 Kan. 715, 741 P.2d 738, 748–49 (1987) (disapproving of flight instructions because it "emphasize[s] and single[s] out certain evidence admitted at a criminal trial"); *State v. Grant*, 275 S.C. 404, 272 S.E.2d 169, 171 (1980) (holding that flight instructions are either an unnecessary "sanction [of] the use of circumstantial evidence" or improper comment that "place[s] undue emphasis upon that evidence"); *State v. Stilling*, 285 Or. 293, 590 P.2d 1223, 1230 (1979) (stating that the "significance of flight should be left to argument"); *State v. Reed*, 25 Wash.App. 46, 604 P.2d 1330, 1333 (1979) (observing that evidence of flight should be "reserved for counsel's argument, with little if any comment by the bench" because of the danger of "plac[ing] undue emphasis upon that evidence."); *State v. Fleming*, 523 S.W.2d 849, 854 (Mo.Ct.App.1975) (noting that the Missouri Supreme Court had prospectively barred flight instructions). Because we have determined that the flight instruction may be appropriate under certain circumstances, and that, as the instruction appears in the Maryland Patter Jury Instructions, the flight instruction does not impermissibly emphasize the value of flight evidence, we decline to adopt the position that flight instructions are *per se* improper.

### The Flight Instruction Was Improper In The Case Sub Judice

 Mr. Thompson argues that even if this Court concludes that flight instructions are not *per se* improper, the trial judge abused his discretion in giving the flight instruction in the

present case because the necessarily circumscribed universe of facts presented to the jury rendered the instruction misleading. Conversely, the State contends that because Mr. Thompson did not object to the admission of the flight evidence, although he knew that the jury would not be informed of his asserted alternate motivation for fleeing from the police, the instruction was proper. We conclude that the trial judge abused his discretion in giving the flight instruction under the circumstances presented in the case *sub judice.*

■ We review a trial judge's decision whether to give a jury instruction under the abuse of discretion standard. *Conyers v. State,* 354 Md. 132, 177, 729 A.2d 910, 934 (1999); *Gunning v. State,* 347 Md. 332, 353–54, 701 A.2d 374, 384 (1997). In *Thomas v. State,* 372 Md. 342, 812 A.2d 1050 (2002), we adopted the four-prong test set forth by the United States Court of Appeals for the Fifth Circuit in *United States v. Myers,* 550 F.2d 1036 (5th Cir.1977), with respect to the probative value of evidence indicating consciousness of guilt and the rubric for assessing the propriety of jury instructions based on such evidence.[4]

In *Myers,* the defendant was charged with three counts of armed bank robbery and was subsequently convicted. *Id.* at 1039. On appeal, Myers argued that the trial court erred "in

---

4. *See e.g., Blanco,* 392 F.3d at 395 (noting that "[f]light instructions are valid only if there is evidence sufficient to support a chain of unbroken inferences from the defendant's behavior to the defendant's guilt of the crime charged."); *Wright,* 392 F.3d at 1278 (quoting with approval the four inferences set forth in *Myers* ); *United States v. Touchstone,* 726 F.2d 1116, 1119–20 (6th Cir.1984) (same); *United States v. Martinez,* 681 F.2d 1248, 1255–56 (10th Cir.1982) (same); *Ex Parte Jones,* 541 So.2d 1052, 1056 (Ala.1989) (observing that an instruction on flight should not be given unless there is sufficient evidence on the record to support the four inferences stated in *Myers* ); *Scott v. United States,* 412 A.2d 364, 371 (D.C.1980) (citing *Myers* and noting that "[a] flight instruction is improper unless the evidence reasonably supports the inference that there was flight or concealment and that the defendant fled because of consciousness of guilt and actual guilt of the crime charged."); *State v. Gomez,* 848 A.2d 221, 229–30 (R.I.2004) (stating that the court had previously adopted the four-prong test set forth in *Myers* for the propriety of flight instructions); *State v. Perrillo,* 162 Vt. 566, 649 A.2d 1031, 1034 (1994) (quoting from *Myers* ).

instructing the jury concerning the proper use of evidence indicating that he fled from FBI agents on two occasions . . . subsequent to the commission of the robbery." *Id.* at 1048. The United States Court of Appeals for the Fifth Circuit concluded that the probative value of flight evidence as

> circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*Id.* at 1049. Moreover, the Court held that "a flight instruction is improper unless the evidence is sufficient to furnish reasonable support for all four of the necessary inferences." *Id.* at 1050, citing *Morris v. United States*, 326 F.2d 192, 195 (9th Cir.1963); *State v. Bruton*, 66 Wash.2d 111, 401 P.2d 340, 341–42 (1965); E. Cleary, McCormick on Evidence § 271 at 655 n. 3 (rev. ed.1972).

 We agree with those jurisdictions which have determined that a flight instruction should not be given unless the four inferences explicated in *Myers* reasonably may be drawn. Therefore, for an instruction on flight to be given properly, the following four inferences must reasonably be able to be drawn from the facts of the case as ultimately tried: that the behavior of the defendant suggests flight; that the flight suggests a consciousness of guilt; that the consciousness of guilt is related to the crime charged or a closely related crime; and that the consciousness of guilt of the crime charged suggests actual guilt of the crime charged or a closely related crime.

It is the third inference, that the consciousness of guilt was consciousness of guilt of the crimes for which he was on trial, that is at issue in the case *sub judice*. *Myers*, 550 F.2d at 1049; *Thomas*, 372 Md. at 352, 812 A.2d at 1056. In *Thomas*, we examined the effect of the third *Myers* prong:

> It is the *Myers* third prong, from consciousness of guilt to consciousness of guilt concerning the crime charged, that in

the instant case is particularly important. Knowledge that the person is suspected of the charged crime is important because the value of the conduct lies in the culprit's knowledge that he or she has committed the charged offense and in his or her fear of apprehension. In the context of flight, one court noted:

'From this analysis of the reasons for the admissibility of such evidence, the force of the rule that evidence of flight because of one crime cannot be considered on the trial of another and entirely different offense is apparent, as in such case the flight does not disclose any guilty conscience in regard to the offense in question.'

*Thus many courts emphasize the importance of connecting a defendant's consciousness of guilt to a consciousness of guilt for the specific crime alleged. There must be an evidentiary basis, either direct or circumstantial, to connect a defendant's consciousness of guilt to the particular crime charged.*

*Thomas,* 372 Md. at 354–55, 812 A.2d at 1057 (citations and footnote omitted; emphasis added).

The gravamen of the issue is whether Mr. Thompson fled in an attempt to avoid apprehension for the crimes for which he was on trial. In the present case, the jury was not presented with evidence of what may have been an alternative and at least a cogent motive for Mr. Thompson's flight, specifically that drugs were found on his person.[5] During his interview with police, Mr. Thompson asserted that he ran from them because he had drugs in his possession, which, according to the State, amounted to eighty-six vials of crack cocaine at the time of his arrest. He was in essence arrested *in flagrante delicto*[6] with respect to the crime of possession of controlled

---

**5.** The evidence of the cocaine had been suppressed. Obviously, Mr. Thompson would not have chosen to introduce any evidence of his possession of drugs, which could have unduly influenced the jury.

**6.** Black's Law Dictionary defines the term *in flagrante delicto* as "in the very act of committing a crime or other wrong; red-handed." Black's Law Dictionary 794 (8th ed.2004).

dangerous substances. We find that this fact, which was known to all parties involved although not revealed to the jury, undermines the confidence by which the inference could be drawn that Mr. Thompson's flight was motivated by a consciousness of guilt with respect to the crimes for which he was on trial in the present case; it provides a foundation for the alternate, and equally reasonable, inference that Mr. Thompson fled due to the cocaine in his possession, an action a person in his position may have taken irrespective of whether he also shot and attempted to rob Mr. Gottesman. Mr. Thompson thus was placed in a difficult situation where he must either not object to the highly prejudicial evidence concerning his possession of a significant amount of cocaine being introduced to the jury to explain his flight (or perhaps forced to make a Hobson's choice to introduce such evidence himself), or decline to explain his flight and risk that the jury would not infer an alternative explanation for his flight.

The Mississippi Supreme Court in *Fuselier v. State,* 468 So.2d 45 (Miss.1985), addressed a similar situation. In that case, the defendant, an escapee from the Louisiana State Penitentiary, was charged with the murder of a woman as well as the theft of her car. At his trial, the prosecution presented evidence that when police arrived at the house where the defendant was staying, he jumped out of a back window and attempted to run toward some woods. *Id.* at 57. During the guilt phase of the defendant's trial the fact that he was an escapee from the Louisiana State Penitentiary was not presented to the jury, and at the close of the trial, the trial court gave a flight instruction. The defendant argued that the evidence of his flight did not support the flight instruction because, "as an escapee, he had an independent sufficient cause to flee." *Id.*

The Mississippi Supreme Court determined that the defendant "was obviously put in a no-win situation by either being required to explain his flight by the fact that he was a prison escapee or not explaining the flight and subjecting himself to a flight instruction." *Id.* The Court concluded that "because the court was aware of an explanation for [the defendant's]

flight, which was at that time inadmissible, we are of the of the opinion that the flight instruction should not have been granted." *See also Young v. State,* 601 So.2d 636, 638 (Fla.Dist.Ct. App.1992) ("[T]he admission of evidence of flight from one crime scene during a short period of time when several crimes have been committed make it difficult, if not impossible, to determine that the flight resulted from feelings of guilt attributable to a particular crime").

Where the defendant possesses an innocent explanation that does not risk prejudicing the jury against him, it would be expected that the defendant would present his purported reasons for his flight to the jury. It is error, however, for the trial judge to give such an instruction in a case like the case *sub judice* where the defendant would be prejudiced by the revelation of the "guilty" explanation for his flight. The circumstances of the case at bar impaired the confidence with which the inference that Mr. Thompson fled from police due to a consciousness of guilt with respect to the crimes charged could be drawn and rendered the instruction misleading as to the existence of an alternative basis for Mr. Thompson's flight from the police.

Because Mr. Thompson could not be expected to introduce the independent basis for his flight, at the risk of prejudicing his position through the admission of being in possession of crack cocaine, no evidence was adduced concerning the other motivations that "may be fully consistent with innocence" of the crimes for which he was being tried. We cannot be sure whether this silence on his part in the face of the flight instruction impacted the jury's perception of the evidence of flight, such that we cannot assert a belief beyond a reasonable doubt that the erroneous flight instruction did not influence the jury's verdict. Therefore, we conclude that giving the flight instruction constituted an abuse of discretion.

### *Conclusion*

Based on our prior holdings concerning evidence of flight, we determine that it is not *per se* improper to instruct the jury on the inferences that could be drawn from a defendant's

flight. We conclude, however, that based on the facts of the case *sub judice* the trial judge abused his discretion in giving a flight instruction in the present case. Therefore, we reverse the judgment of the Court of Special Appeals.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.*